**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-00477-MSK-KMT**

**RACKHOUSE PUB, LLC,**

    **Plaintiff,**

v.

**PROXIMO SPIRITS, INC.,
PROXIMO DISTILLERS, LLC,
STRANANHANSKALAMATH, LLC
S-KALAMATH, LLC, and
STRANAHAN'S COLORADO WHISKEY, LLC,**

    **Defendants.**

_____

**OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE**
_____

    **THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction **(# 18)**. Defendants Proximo Spirits, Inc. and Proximo Distillers, LLC (collectively, "Proximo") filed a response **(# 19)**.

    According to the Complaint, which was filed in the Colorado District Court for Denver County on or about January 23, 2013, the Plaintiff ("Rackhouse") and Defendant StranahansKalamath, LLC ("SK") entered into a 5-year commercial lease in 2009. The lease permitted Rackhouse to occupy a specific portion of a commercial property, owned by SK, at 200 South Kalamath Street, Denver, Colorado, which Rackhouse would use as an "eating and drinking establishment and brew pub." The building has at least two parking lots, one to the east

1

and one to the south, and the lease provided that Rackhouse's employees (and "other tenants in [the] Building") "shall use [the] parking lot to the east of the alley," and "the parking spaces directly south of the Building will be available" for customers of Rackhouse and of SK's businesses.

In December 2010, SK (as well as Defendants S-Kalamath, LLC and Stranahan's Colorado Whiskey, LLC) and the Kalamath property were acquired by Defendant Proximo, and the Complaint contends that SK "assigned the Commercial Lease Agreement to Proximo."

In or about May 2012, Proximo placed several storage containers in one (or perhaps both) of the parking lots, rendering some parking spaces unavailable, and later fenced off those storage containers, further limiting the available parking. Rackhouse contends that Proximo has "allow[ed] or acquiesc[ed]" in permitting its own employees and employees of other tenants to park in the south parking lot (the lot designated for use by customers of Rackhouse and other businesses, making it more difficult for Rackhouse's customers to find parking.

Based on these allegations, the Complaint asserts: (i) a claim for a declaratory judgment, seeking a declaration "determining that the Defendants lack authority to fence off or otherwise occupy the parking spaces with storage containers"; (ii) a "claim" for an "order permanently restraining and enjoined Defendants from allowing or engaging in any further denial of non-exclusive use and access to all" parking spaces in both lots; and (iii) a claim for "damages," presumably sounding in breach of contract.

On February 22, 2013, Proximo removed **(# 2)** the action to this Court, citing federal subject-matter jurisdiction arising out of diversity of citizenship under 28 U.S.C. § 1332. The Notice of Removal indicated that Rackhouse is a citizen of Colorado, and that the Proximo

2

entities are citizens of Delaware and New Jersey.  It declined to address the citizenship of the Stranahan Defendants, contending that they were fraudulently joined in order to defeat diversity jurisdiction, insofar as Rackhouse's claims arose strictly from a contract that was assigned by the Stranahan Defendants to Proximo long before the events at issue here.

On April 29, 2013, Rackhouse filed the instant Motion for Temporary Restraining Order and Preliminary Injunction **(# 18)** pursuant to Fed. R. Civ. P. 65.  Rackhouse's requested relief is a multi-pronged injunction that, in general, requires Proximo to remove the containers and fencing and restore the full use of the east and south parking lots.  The motion does not appear to add any new facts beyond those set forward in the Complaint.

Whether the Court considers the motion as one for an *ex parte* Temporary Restraining Order under Rule 65(b) or one for a preliminary injunction under Rule 65(a), the required factual showing is the same.  To be entitled to provisional injunctive relief, a party must show: (i) that it will suffer an irreparable injury unless the injunction issues; (ii) the threatened injury outweighs whatever damages the injunction might cause to the non-movant; (iii) that the requested relief is not adverse to the public interest; and (iv) that the movant has a substantial likelihood of succeeding on the merits of its case.[1]  *Schrier v. University of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005).

Here, the relief sought by Rackhouse includes "mandatory" items that compel Proximo to take certain affirmative actions (removing the containers and fencing immediately).  *Id.* at 1261.  This places the requested injunction in the category of "disfavored" injunctions, requiring that

---

[1]   To obtain such relief on an *ex parte* basis as a Temporary Restraining Order under Rule 65(b), Rackhouse would also have to demonstrate that the irreparable injury would result before Proximo could be heard in opposition and that Rackhouse has demonstrated what efforts it has made to notify Proximo of the request.  Fed. R. Civ. P. 65(b)(1)(A), (B).

the Court scrutinize Rackhouse's request more closely "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259. Consequently, Rackhouse "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.*

The Court finds that Rackhouse has not made the required showing on several elements. First, the Court finds that Rackhouse has failed to demonstrate that the injuries it is suffering are "irreparable." A party attempting to show an "irreparable injury" must demonstrate "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011). Purely economic loss "is usually insufficient to constitute irreparable harm," as economic losses can readily be compensated with monetary damages. *Id.*; *Schrier*, 427 F.3d at 1267. Here, Rackhouse does not explicitly articulate its alleged injuries. It argues, in largely conclusory terms, unsupported by any affidavits or other evidentiary material, that it "will continue to lose business," apparently from customers who become discouraged by being unable to park. It has not, for example, identified (much less demonstrated) the kinds of business harms that elevate ordinary economic losses into truly irreparable injuries, *e.g.* lost goodwill, diminishment of competitive position, or lost opportunities to distribute unique products. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004). Nor has Rackhouse stated why the injury is not compensable in a damage award. For example, if Rackhouse provided parking for its customers elsewhere, the expense could be calculated in a monetary sum.

At most, Rackhouse has alleged that "the determination of these losses will be difficult to determine."[2] Difficulty in determining damages can sometimes contribute to a showing of irreparable harm, *id.*, the Court cannot say that, in the circumstances presented here, Rackhouse's difficulty in quantifying its damages is sufficient to establish that the future[3] harm it faces is "irreparable." Rackhouse's claims in this action arise purely from contract, and present purely economic damages that are quantifiable under a variety of common contract-damage theories. As noted, Rackhouse might secure access to alternative parking space from nearby businesses, and thus, its injury is measured by the costs in incurs in obtaining that which the lease promised. It might conduct an economic analysis to identify the scope and magnitude of any diminution of business that can be traced to the loss of parking availability. Or it might simply measure its losses by some proportion of the rent it pays to Proximo. All of these measures would permit Rackhouse to quantify its damages with some degree of certainty, and thus, it has not demonstrated that the injuries it is claiming are "irreparable."

The Court further finds that Rackhouse has not shown a sufficient likelihood of success on the merits. Because its claims arise purely from the language of the lease, the Court examines

---

[2] The Court notes that the Complaint itself attempts to quantify Rackhouse's ongoing damages in monetary terms:
> Proximo has blocked 26 parking spaces since June 1, 2012. Estimated damages based upon usage of each parking space one time per day, based on a check average of $ 30.65 for 240 days from June 1, 2012 to January 31, 2013 would be at least $ 191.256.00 The actual damages may be far greater.

*Complaint*, ¶ 45.

[3] The Court emphasizes that provisional injunctive relief is "not to remedy past harm, but to protect plaintiffs from [future] irreparable injury that will surely result." *Schrier*, 427 F.3d at 1267.

that lease to ascertain the contours of Rackhouse's "rights" in the parking spaces. The relevant provision of the lease reads, in its entirety:

> [Proximo] and [Rackhouse] agree that all employees of [Rackhouse] and other tenants in Building shall use parking lot to the east of the alley and the parking spaces directly south of the Building will be available for [Rackhouse's] customers and customers of Stranahan's Colorado Whiskey.

The first sentence of the quoted language merely indicates an agreement that Rackhouse's employees (and the employees of other tenants) will use the east parking lot. It does not guarantee Rackhouse any particular quantity of parking spaces, or even assure that the east parking lot will necessarily accommodate all tenants' parking needs. The second sentence of the quoted language indicates that the south lot will be "available" to Rackhouse/Stranahan customers, but again, does not guarantee any particular number of spaces will be made available nor represent that those spaces will be set aside exclusively for customer use (as compared to, say, use by vendors, contractors, or other non-employee/non-customer visitors to the tenant businesses). Rackhouse may ultimately prove that the current conditions violate the contract in some way, but on the bare record before this Court, which consists of little more than the contractual language itself, the Court cannot say that Rackhouse has made the requisite "strong showing" of a likelihood of success necessary to entitle it to a preliminary injunction.

Accordingly, Rackhouse's motion **(# 18)** is **DENIED**.

The Court further finds that Proximo removed this action on diversity grounds, contending that the Stranahan Defendants were fraudulently joined. Rackhouse has neither sought remand of the case due to lack of complete diversity (if it believes its claims against the Stranahan Defendants remain viable) nor dismissed the claims against the Stranahan Defendants.

Indeed, it is not entirely clear to the Court whether the Stranahan Defendants have been served in this matter. Accordingly, within 21 days of this Order, Rackhouse shall **SHOW CAUSE**, in writing, why the claims against the Stranahan Defendants should not be dismissed for failure to state a claim and failure to prosecute.

Dated this 5th day of May, 2013.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge